UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     -vs-<br><br>CHARLES PETE EYLE,<br><br>                    Defendant. | Nos.   1:14-CR-2058-WFN-1<br><br>ORDER DENYING MOTIONS<br>TO DISMISS |

Pending before the Court are Defendant's two Motions alleging problems with the District's jury selection process:  Defendant's Motion to Dismiss Based Upon Violations of the Sixth Amendment and the Jury Selection and Service Act of 1968 (ECF No. 161) and Motion for New Trial or Dismissal (ECF No. 193).  The Court held an evidentiary hearing on September 23, 2015. The Court has reviewed the file and Defendant's Motions and is fully informed.

## BACKGROUND

The "Amended Plan for the Random Selection of Grand and Petit Jurors," governs jury selection in the Eastern District of Washington. The Amended Plan divides the District into two divisions, Jury Divisions "A" and "B," which are separated by county. Division "B," relevant to this case, consists of certain zip codes in Adams County, as well the complete counties of Benton, Franklin, Kittitas, Klickitat, Walla Walla, and Yakima. Every two years the District gets a list of about 1.2 million names, by county, of registered voters and holders of driver's licenses and state identification cards with the duplications removed from the state of Washington.  For Adams County, the names are also divided by zip code.  To create the master wheel for Division B, containing 55,000 potential jurors, names are randomly selected by county proportional to voter turnout in the last election.

ORDER - 1

From the master wheel the Jury Administrator uses the national Jury Management System to randomly draw 20,000 names for each jury division to populate the qualified list. She sends a jury qualification questionnaire to each of the randomly selected potential jurors. Jurors must return the questionnaires so the Jury Administrator can determine whether they are qualified. If a juror fails to respond, the Jury Administrator reaches out to the non-responding juror and provides another questionnaire for his or her completion. If the non-responding juror still does not respond within a certain period of time, the Jury Administrator conducts a supplemental draw and issues a new form to another newly-selected prospective juror in the same zip code. If the supplemental draw similarly goes unanswered, the administrator reaches out to this newly-selected juror and provides another form. If the second attempt proves equally fruitless, there is no third attempt within this zip code. The Jury Administrator processes qualification questionnaires as they come in so the number of potential jurors on the qualified list increases over time.

Jurors are qualified unless they are not a US citizen, can't read, speak, or understand the English language, have not resided in the district for a year, have pending criminal charges or are a felon whose rights have not been restored. Those potential jurors who qualify and have not been excused based on undue hardship become qualified jurors. When jurors are required for trial, the Jury Administrator uses the Jury Management System to randomly draw the panel of potential jurors from the qualified list. In this case, she made a special random selection and sent those prospective jurors the Special Questionnaires.

Defense expert Jeffrey Martin reviewed a report from Professor Baretto addressing the percentage of Hispanics on the 2013 - 2015 qualified list. According to self-reports, 13.35% of the list are Hispanic, but according to a Spanish surname analysis only 10.56% of the qualified potential jurors are Hispanic. Mr. Martin then compared this information to the Hispanic citizen voting age population (CVAP) in Division B as well as examined voter turnout in individual counties as it compared to CVAP. He opined that the weight given by the selection procedure on voter turnout potentially disparately impacts

representation of Hispanic jurors on the master wheel.  Defendant argues that based on this disparate impact, as well as the statistically significant dearth of Hispanic potential jurors on the panel, the jury impaneled in Defendant's case did not represent a fair cross-section of the community in violation of the Sixth Amendment and Jury Selection Service Ace of 1968.

## DISCUSSION

The Sixth Amendment and the Jury Selection and Service Act afford criminal defendants the right to be tried by an impartial jury selected at random from a fair cross-section of the community.  28 U.S.C. § 1861 *et seq.*; *Berghuis v. Smith*, 559 U.S. 314, 319 (2010).  Each district court is required to formulate its own written plan for jury selection to help ensure that the jury is "selected at random from a fair cross section of the community," all citizens "have the opportunity to be considered for service," and no citizen is "excluded from service . . . on account" of a protected characteristic.  28 U.S.C. §§ 1861-63.

In order to establish a prima facie violation of the fair-cross-section requirement, a defendant must demonstrate the following:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).  Once the defendant has established his prima facie case, the burden then shifts to the Government to demonstrate "a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group." *Id.* at 367-38.

The parties agree that Defendant unquestionably satisfied the first requirement of the *Duren* prima facie case because Latinos undeniably comprise a distinctive group in the community. *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159 (9th Cir.

2014) ("Hispanics are distinctive groups in the community."); *see Duren*, 439 U.S. at 364 (finding women "are sufficiently numerous and distinct from men" so that "if they are systematically eliminated from jury panels, the Sixth Amendment's fair-cross-section requirement cannot be satisfied" (quoting *Taylor v. Louisiana*, 419 U.S. 522, 531 (1975)).

Defendant has not satisfied the second *Duren* requirement because he cannot show that "the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community." *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159 (9th Cir.) *cert. denied*, 135 S. Ct. 709, 190 L. Ed. 2d 445 (2014). The Ninth Circuit recently rejected the "absolute disparity" test as the *exclusive* analytical measure for the second *Duren* prong, and instead directed district courts to employ an appropriate analytical tool based on the circumstances at hand. *Id.* at 1162-63. However, in the situation where the distinctive group is neither a very large nor very small percentage of the population, the absolute disparity test is an appropriate vehicle for measuring disparity. *Id.* at 1161- 62. While the Court recognizes that recent cases ask district courts to perform a nuanced analysis, the Ninth Circuit has found that a 7.7% absolute disparity is constitutionally permissible. *See United States v. Esquivel,* 88 F.3d 722 (1996). Latinos constitute between 14.09% - 17.72% (depending on the source) of the geographically relevant voting population, but compromised only 10.52 % - 13.35% of the qualified jury pool. As applied here, the absolute disparity of Latinos is as low as 0.74 %, based on self-disclosure and the AO-12 form (14.09% minus 13.35 %) up to 7.20% (17.72% minus 10.52 %) based on the heavily Hispanic surname analysis. The lack of self-disclosure for the potential jurors completing the special questionnaire makes it impossible for the Court to assess the actual disparity in this case. Any disparity between the CVAP and the qualified list is minimal and not constitutionally problematic.

Similarly, Defendant cannot demonstrate that the small underrepresentation "is due to systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364. To be systematic, the underrepresentation must be "due to the *system* by which juries were

ORDER - 4

selected." *Id.* at 367.   First, Defendant has failed to present any evidence, beyond pure speculation, that any underrepresentation is due to the Eastern District's jury selection system.   Defendant lays fault in the District's reliance on voter turnout.   Defendant's blame is misplaced.   The District's policy is founded upon statutory guidance in 28 U.S.C. § 1863(b)(3).   The voter turnout records only affect selection for the master wheel.   The master wheel disproportionately includes *more* Latinos than the CVAP.   Defendant's reliance on overall population to argue that Division B is 35.02% Hispanic ignores the requirement that the potential juror need not just be a resident, but must be a citizen and at least 18 years old.   Use of the overall population without controlling for age and citizenship is misleading.

The District policy for addressing non-responders does not cause systematic exclusion of any particular group.   Defendant provided no evidence to support this speculative assertion, and this Court's review of the record is equally unavailing.   As testified to by the Jury Administrator, the clerk's office does not retain records of the zip codes that have the highest non-response rates, nor does it retain records of the rate by which the supplemental draw is nonresponsive.

Lastly, Defendant argues that the computer program the Jury Administrator relies on is not random.   In support, Defendant suggests that the statistics bear out the conclusion, but offers no proof that the program is defective.   The Jury Administrator testified that this District uses the Jury Management System provided by the AO to make random selections. Use of the national program is required.   The District policy relies on the belief that the program provides a truly random draw.   Defendant provides no proof, other than a statistical anomaly as seen in the selection in the panel for this case, to show that the program is defective.   One statistical anomaly does not mean that the system is defective. There is no evidence to prove any relationship between the current system and the underrepresentation of Latinos such that the under-representation is "inherent in the particular jury-selection process." *See Randolph v. California*, 380 F.3d 1133, 114-42 (9th Cir. 2004).

ORDER - 5

Defendant has not made a prima facie case using the *Duren* factors.  There is no evidence before this Court that Latinos are disproportionately underrepresented on the qualified list or that the District policy systematically excludes any group.    For all the foregoing reasons, the Defendant's Motions are denied.  Accordingly,

**IT IS ORDERED** that:

1.    Defendant's Motion to Dismiss Based Upon Violations of the Sixth Amendment and the Jury Selection and Service Act of 1968, filed June 1, 2015, **ECF No. 161**, is **DENIED**.

2.    Defendant's Motion for New Trial or Dismissal, filed August 13, 2015, **ECF No. 193**, is **DENIED**.

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 3rd day of November, 2015.


                    s/ Wm. Fremming Nielsen
11-02-15                 WM. FREMMING NIELSEN
                    SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 6